UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. 5:14-cr-00318-LHK |
| Plaintiff, ) | |
| v. ) | **ORDER GRANTING MOTION TO QUASH** |
| SKYLAR ARIEL PHOENIX, ET AL., ) | **(Re: Docket No. 76)** |
| Defendants. ) | |

Defendants in any federal criminal case may subpoena witnesses and documents to appear or be produced at or before trial. Fed. R. Crim. P. 17(c) explicitly states that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence." Less explicit is the extent to which such documents, data and the rest may be compelled, consistent with the court's authority under the very same rule to "quash or modify the subpoena if compliance would be unreasonable or oppressive."[1] The dispute before the court presents yet another opportunity to provide guidance on this vexing issue.[2]

---

[1] Fed. R. Crim. P. 17(c)(2).

[2] *See United States v. Covelli*, Case No. 11-cr-00471-DLJ (N.D. Cal. Mar. 14, 2013) (Docket No. 467).

1

Case No. 5:14-cr-00318-LHK
ORDER GRANTING MOTION TO QUASH

In this case the government charges Defendants Skylar Ariel Phoenix and Dana Wilkey with a scheme to defraud Blue Shield of California, a non-profit corporation and health care provider. Blue Shield now moves to quash Defendants' subpoenae duces tecum. On October 1, 2015, the parties appeared for an extended hearing. Having considered the papers and arguments of counsel, Blue Shield's motion is GRANTED.

## I.

"Rule 17(c) was not intended to provide an additional means of discovery."[3] Instead, the rule aims simply "to expedite the trial" by giving defendants the opportunity to inspect items possessed by the government, including items supplied by third parties.[4] So while Defendants can use Rule 17(c) to subpoena documents withheld by the government, they may not include broad "catch-all" provisions "not intended to produce evidentiary materials."[5] Of key concern is avoiding "a fishing expedition to see what may turn up."[6]

From June 9, 2003 to September 30, 2011, Phoenix worked in a variety of positions in Blue Shield's marketing department.[7] After getting a tip from her former fiancée, Blue Shield uncovered what it concluded were embezzlement schemes perpetrated by Phoenix, Wilkey and Phoenix's partner Lissa.[8] The alleged schemes included (1) fraudulent invoices and resulting payments from Skylar Phoenix to Lissa Phoenix d/b/a Adwil Communications for the period of time from September 2004 through April 2006 with identified losses to Blue Shield of $97,652; (2) contract fraud and kickbacks for the period of time from December 6, 2005 through July 2012

---

[3] *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

[4] *Id.*

[5] *Id.* at 221.

[6] *Id.*; *see also United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981); 2 CHARLES ALAN WRIGHT, NANCY J. KING, SUSAN R. KLEIN, AND ANDREW D. LEIPOLD, FEDERAL PRACTICE & PROCEDURE § 274, at 242, 250 (explaining that Rule 17(c) "was not intended as a discovery device" and characterizing any such interpretation of the rule as a "distortion").

[7] *See* Docket No. 74 at ¶ 2.

[8] *See id.* at ¶ 3.

among Skylar Phoenix and Dana Wilkey with estimated losses to Blue Shield of $1,241,000; and (3) a ghost employee scheme involving Lissa Phoenix, a contract employee, and Skylar Phoenix for the period of time from June 2007 through March 2011 with identified losses to Blue Shield of $463,047.[9]

The discovery provided by the government included a Blue Shield internal investigation report as well as six binders of documents provided by Blue Shield. The investigation report concluded that (1) "[a] search of [Blue Shield] Marketing Department internal shared drives, email history, and hard files controlled by Phoenix failed to reveal any information that would support Beckwith [Lissa Phoenix) [sic] providing any labor or work product associated with the invoices paid by [Blue Shield] through Phoenix' [sic] [Skylar Phoenix] approval;" and (2) "No work or work products can be found at [Blue Shield] related to the invoices submitted under Lisa [sic] Beckwith dba Adwil Communications."  The discovery provided did not include the complete set of e-mails and documents subjected to term searching by Blue Shield to winnow the universe of documents it reviewed in preparing the report.

In accordance with Rule 17(c), Defendants asked permission to serve subpoenas on Blue Shield demanding seven groups of requests: (1) Standards; (2) Business Transactions; (3) Transactional Responsibilities and Accountability; (4) Quality; (5) Compliance; (6) Other; and (7) Emails.  The last category—Emails—included specific requests that go on for over a dozen pages, bringing the total page count of requests to 26.  No limits on document custodians were included. The court granted permission as requested, but without prejudice to any motion Blue Shield might wish to file.  On August 20, 2015, Defendants proceeded to serve the subpoenas, allowing 21 days for full compliance.  As contemplated, on September 10, 2015, Blue Shield moved to quash and alternatively for a protective order for all materials it is required to produce.

---

[9] *See id.* at ¶ 4.

3

Case No. 5:14-cr-00318-LHK
ORDER GRANTING MOTION TO QUASH

## II.

In *United States v. Nixon*, the Supreme Court held that for a defendant to secure production prior to trial, he must "clear three hurdles: (1) relevancy, (2) admissibility, and (3) specificity."[10] Even then, a trial court must consider whether the materials are "otherwise procurable reasonably in advance of trial by exercise of due diligence," whether the defendant can "properly prepare for trial without such production and inspection in advance of trial," and whether "the failure to obtain such inspection may tend unreasonably to delay the trial."[11] While other courts have suggested that the Supreme Court's evidentiary restrictions on Rule 17(c) subpoenas apply only to subpoenas on the government,[12] the Ninth Circuit has specifically rejected this view and applied its teachings where, as here, the subpoena target is a third party.[13] Here, a careful review of each of the document categories requested shows that with respect to Defendants' email demands, Defendants' requests fail to meet these standards.

***First***, Defendants are incorrect that the court's ok to issue the subpoena ends any assessment of admissibility, specificity and the like under *Bowman Dairy* and *Nixon*. No case the court has found suggests this, and this court explicitly preserved Blue Shield's right to move to quash. Defendants point to *United States v. Krane*[14] to suggest that the issuance of an order granting a pretrial subpoena is the end of the inquiry. But *Krane* only states that "the court must be persuaded by the moving party" that the subpoena meets these requirements.[15] To deny Blue Shield any opportunity to refute this now would be, at a minimum, unreasonable.

---

[10] 418 U.S. 683, 699-700 (1974).

[11] *Id*. at 699.

[12] *See, e.g., United States v. Tomison*, 969 F. Supp. 587 (E.D. Cal. 1997).

[13] *See United States v. Fields*, 663 F. 2d 880, 881 (9th Cir. 1981) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than from the United States."); *United States v. Reyes*, 239 F.R.D. 591, 597 n.1 (N.D. Cal. 2006) (citing *Fields* and characterizing the *Tomison* discussion as dicta).

[14] 625 F.3d 568 (9th Cir. 2010).

[15] *Id*. at 574; *see also Nixon*, 418 U.S. at 700; *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1994); *United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981).

United States District Court
For the Northern District of California

***Second***, while there are undoubtedly relevant emails in the broad scoop of materials Defendants seek, Defendants' requests clearly call for emails that are not. For example, the subpoenas seek documents that were "requested," "reviewed," or "obtained" during Blue Shield's preparation of an investigation report shared with the government. But Defendants fail to show that documents that were searched for specific terms but not reviewed because they were negative to those terms are relevant. Indeed, the whole point of term searching is to avoid documents whose probability of being relevant is so low as not to warrant the burden and expense of individual review.

***Third***, Defendants' requests are nowhere near as specific as required to avoid the "fishing expedition" that *Bowman Dairy*, *Nixon* and other appellate decisions require this court to prevent. Rather than identifying the particular documents from particular custodians that Defendants require, the subpoena recites broad categories of documents that would require production of Blue Shield's emails relating to Skylar Phoenix for the entire time that she worked at Blue Shield. That is a period of over eight years and includes, at a minimum, at least 190,000 emails and 56 inches of hard copy marketing project files. Even worse, various requests ask for "any" reporting to regulators or auditors, which, as Judge Breyer has noted, are particularly suspect in any Rule 17(c) analysis.[16] Still other requests would require Blue Shield to compile documents into spreadsheets—compilations that do not even exist.

The burden on Blue Shield from Defendants' demand would be undue, especially in the short period of time provided for compliance. Blue Shield submits a declaration outlining what is obvious: reviewing 190,000 emails, as well as those from backup tape sets, for relevance, and to avoid confidentiality and privacy restrictions, would require hundreds of hours and substantial

---

[16] *Reyes*, 239 F.R.D. at 606 ("A demand for 'any and all documents relating to several categories of subject matter . . . rather than specific evidentiary items,' suggests the subpoena's proponent 'seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose—to secure the production for a court proceeding of specific admissible evidence.'") (quoting *United States v. Louis*, Case No. 04-CR-203 (LTS), 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)); s*ee also United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 164 (E.D.N.Y. 2005); *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994).

5
Case No. 5:14-cr-00318-LHK
ORDER GRANTING MOTION TO QUASH

costs.  Blue Shield's declaration thus makes clear that this is not, as Defendants suggest, a search that would be "quick, targeted and not unduly burdensome."  While Defendants suggest that Blue Shield reviewed these materials previously, the declaration confirms the opposite, that only those documents positive to the list of search terms were considered.

Finally, in explicitly requesting "[c]opies of all previous statements or interviews of any anticipated government witness in this case," Defendants suggest that third parties may not shelter witness interviews from Rule 17 subpoenas.  Rule 17(h), however, makes clear that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule."[17]

### III.

Blue Shield's motion to quash is GRANTED.  The motion for a protective order is MOOT.  Before Defendants resubmit any subpoenas for approval of service, they must meet and confer with Blue Shield to attempt to resolve the scope of production cooperatively.

**SO ORDERED.**

Dated: October 15, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[17] Fed. R. Crim. P. 17(h).  Because the cited flaws by themselves require quashing the subpoena, the court does not reach Blue Shield's additional arguments based on patient confidentiality and attorney-client privilege.